UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAKEDA T.,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

**DECISION AND ORDER**

6:20-CV-06867 EAW

# INTRODUCTION

Represented by counsel, plaintiff Makeda T. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 15), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 12) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on October 2, 2013. (Dkt. 9 at 31, 1889).[1] In her applications, Plaintiff alleged disability beginning October 1, 2011. (*Id.* at 31, 1889, 1903). Plaintiff's applications were initially denied on December 12, 2013. (*Id.* at 31, 1889). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Connor O'Brien on October 7, 2015. (*Id.* at 48-99). On February 17, 2016, the ALJ issued an unfavorable decision. (*Id.* at 28-47). Plaintiff requested Appeals Council review; her request was denied on May 17, 2016. (*Id.* at 9-15). Plaintiff sought judicial review and on March 26, 2018, another judge of this Court entered a Decision and Order concluding that remand for further administrative proceedings was required. (*Id*. at 1889-94).

On September 6, 2018, the Appeals Council issued an order remanding the case to the ALJ. (*Id*. at 1897-98). The ALJ held supplemental hearings on November 22, 2019, March 9, 2020, and May 13, 2020. (*Id*. at 1705-1888). On June 23, 2020, the ALJ again issued an unfavorable decision. (*Id*. at 1673-1703). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to

perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

**DISCUSSION**

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2020. (Dkt. 9 at 1678). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 1, 2011, the alleged onset date, except that Plaintiff "worked at substantial gainful activity levels" in 2018 and 2019. (*Id*.). The ALJ explained: "Despite these periods that arguably reflect substantial gainful activity, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The remaining findings address the periods the claimant did not engage in substantial gainful activity." (*Id*. at 1679).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "rotator cuff injury to the right (dominant) shoulder; injury to the left knee (patella); degenerative disc and degenerative joint disease in the cervical and lumber spine; asthma." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairment of adjustment disorder was non-severe. (*Id*. at 1680-82).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 1682). The ALJ particularly considered the criteria of Listings 1.02, 1.04, and 3.02 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff] can lift and carry up to 20 pounds occasionally and 10 pounds frequently; can lift or carry no more than 10 pounds occasionally with her right (dominant) arm alone. She can sit, stand, and walk 6 hours each and requires a sit/stand option that allows for changing position every 60 minutes for up to 5 minutes. She cannot climb a rope, scaffold, or ladder; cannot balance on narrow, slippery or moving surface; and cannot crawl. She can occasionally stoop; crouch; climb stairs or ramps, and kneel. She cannot work overhead. She can occasionally reach in other directions with her right arm; and frequently reach in other directions with her left. She can frequently handle with her right dominant arm and continuously with her left. She can occasionally push and pull at weight for light. She can tolerate up to occasional exposure to extreme cold, extreme heat, wetness, humidity and air borne irritants. She needs to avoid hazards, such as open waters or unprotected heights.

(*Id.*). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 1692).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of school bus monitor, children attendant, decorator consultant, surveillance systems monitor, and document preparer. (*Id.* at 1693-94). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 1694).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that: (1) the ALJ failed to give good reasons for rejecting limitations provided by Plaintiff's treating physicians; (2) the ALJ's determination was based on "multiple mischaracterizations or selective readings of the evidence"; and (3) the ALJ failed to reconcile obvious conflicts between the representative occupations identified by the VE and the assessed RFC at step five. (Dkt. 12-1 at 1). The Court is unpersuaded by these arguments for the reasons that follow.

### A. Evaluation of Treating Physicians' Opinions

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the

>Social Security Administration's attention that tend to support or contradict the opinion.

*Id*. An ALJ's failure to explicitly apply the requisite factors is a "procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, she must "give good reasons in [her] notice of determination or decision for the weight [she gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

Plaintiff argues that the ALJ did not properly apply the treating physician rule in assessing opinions issued by treating physician Dr. Hossein Hadian in 2015 and 2018 and in assessing opinions issued by treating physician Dr. Eun Ha Lee in 2012 and 2013. (Dkt. 12-1 at 29-33). The Court disagrees.

Turning first to Dr. Hadian, the ALJ explained in her opinion that Plaintiff began pain management with Dr. Hadian in May of 2015, and that Plaintiff continued treatment with Dr. Hadian thereafter, including that she "continued to follow with Dr. Hadian for periodic injections to the low back as well as radiofrequency ablation in the lumbar spine

and sacroiliac regions." (*Id*. at 1685-87). The ALJ expressly walked through Plaintiff's treatment history with Dr. Hadian and discussed Dr. Hadian's treatment records in detail. (*Id*.).

The ALJ then gave good reasons for affording less than controlling weight to Dr. Hadian's opinion from August of 2015. The ALJ explained that Dr. Hadian had examined Plaintiff on August 14, 2015, and that Plaintiff showed little tenderness in her left sacroiliac joint and had negative straight leg raises, but positive lumber facet maneuver in the lower lumbar area. (Dkt. 9 at 1685; *see* Dkt. 10 at 322). Dr. Hadian noted that Plaintiff was responding well to her lumbar sympathetic blocks and sacroiliac joint injections and recommended that she engage in physical therapy. (Dkt. 9 at 1685; *see* Dkt. 10 at 323). Further, on August 24, 2015, Plaintiff continued to show improvement in her sacroiliac joint and was able to walk without a limp. (Dkt. 9 at 1685; *see* Dkt. 10 at 318). The ALJ explained that these contemporaneous treatment records were inconsistent with the extreme limitations identified by Dr. Hadian in his August 2015 opinion. (Dkt. 9 at 1685-86; *see also id*. at 1691 (explaining that Dr. Hadian's "actual treatment notes show good response to injections, normal gait and no evidence to support a finding of such limited ability to sit, stand or walk, or remain on task")). The ALJ further explained why she found certain other medical opinions more consistent with the evidence of record. (*See id*. at 1689-92).

It is well-established that an inconsistency between a treating physician's treatment notes and his opinion is a good reason to afford less than controlling weight. *See, e.g., Cichocki v. Astrue,* 534 F. App'x 71, 75 (2d Cir. 2013) ("Because Dr. Gupta's medical

- 9 -

source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight."); *Clark v. Colvin*, No. 1:13-CV-01124 (MAT), 2016 WL 4804088, at *4 (W.D.N.Y. Sept. 13, 2016) ("As the ALJ found, Dr. Cotton's opinion was inconsistent with the findings of his own treatment notes as well as with the findings of other treating and consulting sources. Therefore, the ALJ was within his discretion to decline to give controlling weight to Dr. Cotton's opinion."); *Kirk v. Colvin*, No. 12-CV-6075-FPG, 2014 WL 2214138, at *7 (W.D.N.Y. May 28, 2014) ("Inconsistencies between [a treating physician's] treatment notes and final opinions constitute 'good reasons' for assigning her opinions non-controlling weight."). Here, the ALJ identified the specific treatment records that she viewed as inconsistent with Dr. Hadian's August 2015 opinion and further explained the manner in which those treatment records were inconsistent. The ALJ did not mischaracterize those records, and she was within her discretion to conclude that were was no correlation between Plaintiff's demonstrated positive response to treatment and the extreme limitations identified by Dr. Hadian.

Plaintiff argues that the ALJ committed a factual error in stating that Plaintiff had "normal gait," because "the record often showed abnormal gait." (Dkt. 12-1 at 31). However, Plaintiff cites to records from other physicians in 2016, 2018, and 2019 (*see* Dkt. 9 at 508; Dkt 10 at 440, 493, 546, 1217, 1613), while the ALJ was specifically referring to Dr. Hadian's contemporaneous treatment notes, which did in fact reflect the ability to walk without a limp and a gait that was within normal limits. The Court accordingly does not find any factual error by the ALJ.

Turning to Dr. Lee, the ALJ noted that Plaintiff first sought physiatry treatment from Dr. Lee in early 2012. (Dkt. 9 at 1684). The ALJ then walked through the records of Dr. Lee's treatment of Plaintiff in 2012 and 2013. (*Id*.). The ALJ noted that Dr. Lee had issued multiple opinion statements, and that her "opinions as to specific functions, including sitting, standing, walking, lifting and carrying, are consistent with a finding of light exertional capability." (Dkt. 9 at 1689-90). The ALJ accordingly adopted Dr. Lee's opinion as to Plaintiff's specific functional limitations. However, the ALJ noted that Dr. Lee had also opined that Plaintiff was limited "to part-time work, from three hours per day four days per week, to four hours per day five days per week." (*Id*. at 1690). The ALJ found that the record did not support this limitation, explaining that: (1) testifying medical expert Dr. John F. Kwock, who reviewed the entire medical file and Plaintiff's hearing testimony, "concluded that the medical evidence did not support Dr. Lee's conclusions regarding the minimal hours that [Plaintiff] could work"; (2) Dr. Lee's finding regarding the number of hours Plaintiff could work was "not supported by any clinical findings or by any allegations of [Plaintiff]"; (3) "the limitation of working hours appears to be left to [Plaintiff's] discretion as Dr. Lee stated . . . that the claimant can work longer as tolerated"; and (4) "[Plaintiff's] range of motion limitations, pain level, and strength deficits are accommodated by the lifting and carrying limitations." (*Id*. at 1689-90). The ALJ also explained that while Dr. Hadian had opined in 2018 that Plaintiff could work for only 24 hours per week and that "[a]s tolerated, she may increase her work hours" (Dkt. 10 at 639) no support for that conclusion could be found in his treatment records, and it appeared to be "solely related to [Plaintiff's] subjective report because actual examination showed no

- 11 -

tenderness and only mild to moderate discomfort on tests designed to elicit discomfort. [Plaintiff] walked with a normal gait, and admitted that her function had improved." (Dkt. 9 at 1687, 1690). The ALJ further gave great weight to the opinions of treating physician Dr. Michael Leit, who opined in July and December of 2012 that Plaintiff was capable of working a 40-hour week. (*Id*. at 1683, 1690).

The ALJ adequately explained her reasons for finding that Plaintiff was not limited to part-time work as opined by Drs. Lee and Hadian. In particular, the ALJ was within her discretion to credit the opinions of Dr. Leit (who was also a treating physician) and Dr. Kwock over the opinions of Drs. Lee and Hadian as to this issue. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.");  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (explaining that genuine conflicts in the medical evidence are for the ALJ to resolve); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (the applicable regulations "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record").

Plaintiff contends that by stating that Dr. Lee and Dr. Hadian failed to identify any clinical findings supporting their opinions limiting Plaintiff to part-time work, the ALJ "create[d] a medico-legal standard for evidence that she—as a lay person—would require to support the limitations," because "what objective evidence would equate to the ability to work only twenty to twenty four hours per week?" (Dkt. 12-1 at 32). The Court does

not find this argument persuasive. Under the treating physician rule, the ALJ is expressly required to consider the evidence supporting the opinion. *Cf.* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). The Court does not find that the ALJ erred in this regard, or that the ALJ otherwise failed to apply the substance of the treating physician rule when considering Dr. Hadian's and Dr. Lee's opinions.

B.     **Characterization of the Evidence of Record**

Plaintiff next argues that the ALJ mischaracterized the evidence of record, leading to a determination that was not supported by substantial evidence. (Dkt. 12-1 at 33). However, the Court disagrees that the ALJ mischaracterized the evidence of record. Plaintiff first faults the ALJ for stating that Plaintiff's "treatment reflects a lack of follow through that is at odds with the allegation of disability." (Dkt. 9 at 1689). Plaintiff points out that she did pursue various courses of treatment from multiple specialists. (Dkt. 12-1 at 34). However, the ALJ explicitly discussed the records of such treatment in reaching her conclusions. She also correctly noted that Plaintiff's treating orthopedic physician's assistant advised Plaintiff of the importance of attending physical therapy in February of 2018 and that Plaintiff indicated that physical therapy "doesn't fit in her schedule." (Dkt. 10 at 1028). Plaintiff thereafter discontinued physical therapy after attending only a few sessions, despite reporting on March 26, 2018, that it had provided her with some relief. (*Id*. at 1111, 1132). The ALJ also correctly noted that Plaintiff had been advised to seek treatment from a vestibular specialist, but that there was no indication in the record that she

had ever done so. (Dkt. 9 at 1688-89). While Plaintiff might disagree with the ALJ's characterization of this evidence, the Court does not find that it was without support in the record.

Plaintiff argues that Dr. Hadian "confirmed that Plaintiff had not responded to chiropractic care or physical therapy" and that he "also confirmed at one point her insurance would not pay for further physical therapy." (Dkt. 12-1 at 35). However, the citation Plaintiff gives for these assertions is to a treatment note wherein Dr. Hadian was simply recording what Plaintiff said to him, not making his own independent determination (*See* Dkt. 10 at 1905). Moreover, even this treatment note indicates that Plaintiff reported she "<u>decided</u> not to pursue chiropractic care" because she was unhappy with the side effects, not that chiropractic care was ineffective. (*Id*. (emphasis added)). Again, the Court does not find that the ALJ's recitation of the evidence of record amounted to an improper mischaracterization.

Plaintiff next contends that the ALJ erred in stating that Plaintiff "has represented repeatedly that she was taken out of work by her chiropractor, but has been unable to point to any evidence of that," citing to "a statement from Irondequoit Chiropractic Center dated April 19, 2019 that states Plaintiff was temporarily totally disabled from 'motor vehicle accident related injuries.'" (Dkt. 12-1 at 35). However, in context, it is clear that the ALJ was referring to Plaintiff's repeated claim that she had been taken of out work by her chiropractor <u>for vertigo</u>. Indeed, the ALJ explained that Plaintiff "testified repeatedly that her chiropractor took her out of work because of vertigo," but that the treatment notes from her chiropractor made no reference to treatment for vertigo, but instead memorialized

treatment for lower back pain. (Dkt. 9 at 1688). The fact that Plaintiff's chiropractor took her out of work in April of 2019 for injuries sustained in a motor vehicle accident (and not for vertigo) does not contradict the ALJ's statement as properly understood in context.

Finally, Plaintiff claims that the ALJ "mischaracterized . . . whether or not Plaintiff's work done in 2018 and 2019 was competitive or not." (Dkt. 12-1 at 35-36). Specifically, Plaintiff claims that the ALJ ignored statements from Dr. Hadian in which he "confirmed that Plaintiff was working 'modified duty' since her car accident in January 2018" and warned her to be careful holding a full-time job, to avoid lifting heavy objects, to be careful when lifting individuals, and to exercise activity modification. (*Id.*). As an initial matter, several of Plaintiff's citations are to Dr. Hadian's records from 2017, before Plaintiff was performing the work at issue. Plaintiff has not explained how she believes these records are relevant to the matter of whether the work she was performing in 2018 and 2019 was competitive.

Moreover, and more importantly, the question before the ALJ at step one of the analysis was not what kind of work Plaintiff's physicians recommended that she do, but what kind of work she was actually doing and how much money she earned doing it. *See* 20 C.F.R. § 404.1520(a)(4)(i) ("At the first step, we consider your work activity, if any."); *id*. § 404.1574(a)(1) ("Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity."). Plaintiff does not suggest that Dr. Hadian had any personal knowledge of Plaintiff's job responsibilities, and the ALJ relied on the testimony of Plaintiff herself in that regard, consistently with the regulations. *See id.* § 404.1565(b) ("Under certain

circumstances, we will ask you about the work you have done in the past. If you cannot give us all of the information we need, we may try, with your permission, to get it from your employer or other person who knows about your work, such as a member of your family or a co-worker."). The Court does not find that the ALJ erred at step one by not discussing the cited portions of Dr. Hadian's records.

In sum, the Court does not find that the ALJ's determination relied on a mischaracterization of the evidence of record. Accordingly, the Court finds no basis to disturb the ALJ's conclusions.

C.     **Step Five Finding**

Plaintiff's final contention is that the ALJ erred at step five of the analysis because three of the identified representative occupations required light work (which requires the ability to lift up to 20 pounds occasionally and 10 pounds frequently), but the ALJ "limited Plaintiff to lifting only 10 pounds occasionally with her dominant arm—which would facially conflict with the job requirements of light work. Neither the ALJ nor the Vocational Expert reconciled this obvious conflict." (Dkt. 12-1 at 37). This argument lacks merit. The Court notes initially that the Second Circuit rejected a very similar contention in *Colvin v. Berryhill*, 734 F. App'x 756 (2d Cir. 2018). There, the plaintiff— who was missing "the distal tips of three fingers on his left hand"—argued that there was a facial conflict between the RFC finding, which concluded that he could not perform any fingering or more than occasional handling with his left hand, and the definitions of the relevant occupational titles identified by the VE, which required frequent handling or constant fingering. *Id*. at 759. The Second Circuit explained that there was no conflict,

because the definitions did "not state that a worker must be able to perform such handling or fingering with both hands[.]" *Id.* Similarly, the ALJ in this case found that Plaintiff could "lift and carry up to 20 pounds occasionally and 10 pounds frequently" but could "lift or carry no more than 10 pounds occasionally with her right (dominant) arm alone." (Dkt. 9 at 1682). Nothing in the definition of light works indicates that an individual must be able to satisfy the lifting and carrying requirements with a single arm. *See* 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Moreover, in addition to the three light work jobs, the ALJ also—relying on the VE's testimony—identified two sedentary jobs that Plaintiff was capable of performing. (Dkt. 9 at 1694). At step five, "[t]he Commissioner need show only one job existing in the national economy that [a claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011). The ALJ did so here, and there is accordingly no basis to disturb the Commissioner's finding of non-disability.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 26, 2022
　　　　Rochester, New York